HOWLETT'S TREE SERVICE, Appellant and Cross-Appellee, v. THE IN-DUSTRIAL COMMISSION *et al.* (Kevin J. Engels, Appellee and Cross-Appellant).

Third District   No. 3—86—0793WC

Opinion filed August 19, 1987.—Rehearing denied October 2, 1987.

Gary D. Nelson and Rex K. Linder, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Harrison H. Kavensky, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Claimant, Kevin J. Engels, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) as a result of a knee injury sustained in the course of his employment with respondent, Howlett's Tree Service. The arbitrator awarded claimant temporary total disability benefits and vocational rehabilitation expenses for a one-year course in the agricultural/business track of a local junior college for a position in co-op management, seed fertilizer sales, or as an elevator operator. The Industrial Commission affirmed the arbitrator's award, added additional temporary total disability benefits, and awarded interest, penalties, and attorney fees to claimant. The circuit court set aside the award of penalties and attorney fees but confirmed the Commission in all other respects. On appeal, respondent asserts that the award of temporary total disability benefits and vocational rehabilitation expenses was against the manifest weight of the evidence. In his cross-appeal, claimant contends that the circuit court erred by setting aside the award of penalties and attorney fees under the Act.

Claimant worked as a tree trimmer for respondent; on January 2, 1980, claimant suffered an injury to his left knee when he fell getting out of a truck. It is undisputed that as a result of his injury, claimant was unable to continue working for respondent and was restricted to work of a sedentary nature.

Respondent paid claimant the total of $27,996.18 in temporary total disability benefits between January 1980 and May 1983 and between January 1984 and May 1984. Respondent sent claimant to a vocational consultant named Alfred Walker, who suggested that if plaintiff wished to take courses in a vocational rehabilitation program, he should first enroll in high school G.E.D. preparation classes. Claimant enrolled in such classes, which respondent paid for, and received a G.E.D.

Walker recommended a one-year training program in co-op management, seed fertilizer sales, or elevator operation at Black Hawk College-East, a junior college located in Kewanee, as the most appropriate vocational rehabilitation program for claimant. Respondent, however, refused to pay for any junior college courses after it paid for an orientation program that claimant enrolled in at Black Hawk. Claimant had wished to take some additional general courses at Black Hawk in order to prepare for the air traffic controller's exam.

Respondent subsequently sent claimant to a vocational rehabilitative service called E.P.S. Claimant testified that he followed up on two job leads provided by an E.P.S. counselor, but no employment was available at these places. In January 1984, claimant sent E.P.S. a list of 10 jobs he had unsuccessfully applied for in fall 1983. Claimant testified that he sent a second list to E.P.S. listing other jobs he had applied for, but E.P.S. informed him that it never received this list. Claimant further testified that he applied for approximately five other jobs that were not mentioned on either list. Claimant advised respondent early in 1984 that he wished to attend a school in Houston, Texas, which trained underwater welders and construction workers. Although claimant sent respondent materials regarding this school, he received no response to this request.

On appeal, respondent contends that the awards of temporary total disability and vocational rehabilitation expenses were an abuse of discretion because claimant has sufficient skills to gain employment within his physical restrictions, that claimant's failure to find suitable employment resulted from general economic conditions or claimant's failure to make a good-faith effort to find a job, that claimant failed to show that a position would be available for him if he completed the training program ordered by the arbitrator, and that there was insufficient evidence to support the type of vocational rehabilitation ordered by the arbitrator. In his cross-appeal, claimant asserts that the awards of penalties and attorney fees by the Commission were not against the manifest weight of the evidence and were improperly set aside by the circuit court. In evaluating the assertions raised by both parties on appeal, we note that findings of the Industrial Commission will not be reversed upon review unless they are against the manifest weight of the evidence. *C. D. Turner & Sons, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 231, 237; *Caterpillar Tractor Co. v. Industrial Com.* (1980), 81 Ill. 2d 416, 421.

■ We first address the issue of the vocational rehabilitation expenses award to petitioner. Under section 8(b) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b)), only necessary vocational rehabilitation expenses are to be awarded. A claimant is generally entitled to rehabilitation expenses if he sustained an injury which caused a reduction in earning power and there is evidence rehabilitation will increase his earning capacity. (*National Tea Co. v. Industrial Com.* (1983), 97 Ill. 2d 424, 432.) The Illinois Supreme Court has alluded on occasion to the absence of statutory procedures to govern proposed rehabilitation programs. (97 Ill. 2d 424; *Zenith Co. v. Industrial Com.* (1982), 91 Ill. 2d 278; *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489.)

With no legislative guidance, the court has looked to other jurisdictions for factors to consider in determining the reasonableness of a rehabilitation award. (*National Tea Co. v. Industrial Com.* (1983), 97 Ill. 2d 424.) In *National Tea*, the court stated:

"Generally, a claimant has been deemed entitled to rehabilitation where he sustained an injury which caused a reduction in earning power and there is evidence rehabilitation will increase his earning capacity. [Citation.] Related factors concern a claimant's potential loss of job security due to a compensable injury [citation], and the likelihood that he will be able to obtain employment upon completion of his training. [Citation.] In contrast, rehabilitation awards have been deemed inappropriate where the claimant unsuccessfully underwent similar treatment in the past [citation]; where he received training under a prior rehabilitation program which would enable him to resume employment [citation]; where he is not 'trainable' due to age, education, training and occupation [citation]; and where claimant has sufficient skills to obtain employment without further training or education [citation]." 97 Ill. 2d 424, 432-33.

■ Further factors noted by the Illinois Supreme Court are the costs and benefits to be derived from the rehabilitation program, the employee's work-life expectancy, his capacity and motivation to undertake the program, and his prospects for recovering work capacity through medical rehabilitation or other means. 97 Ill. 2d 424, 433, citing *Lancaster v. Cooper Industries* (Me. 1978), 387 A.2d 5, 9.

■ Whether a rehabilitation program, vocational and otherwise, should be designed to restore claimant to his pre-injury earning capacity depends on the particular circumstances of the case. The standard used to gauge the proposed rehabilitation program should not be inflexibly applied. *National Tea Co. v. Industrial Com.* (1983), 97 Ill. 2d 424, 433.

■ Thus, from our reading of the relevant case law, the standard which applies in gauging the value and necessity of a proposed rehabilitation program is one that is flexible and contains a substantial number of factors. Respondent argues that certain factors, *i.e.*, those which are most favorable to it, should carry the most weight in determining the reasonableness of a proposed vocational program. Specifically, respondent asserts that the petitioner must establish a good-faith effort to seek employment and show an inability to find employment within his physical restrictions in order to merit rehabilitation expenses to be borne by respondent. Further, respondent contends petitioner must show that there will be a position available in

the field of endeavor upon the completion of the rehabilitation program. These are factors which should be used in determining the propriety of an award of a rehabilitation program, but they are not exclusive factors.

It is the Commission's province to weigh *all* the factors regarding a rehabilitation program and to make its decision accordingly. Admittedly, in relationship to some factors, petitioner's evidence here is not substantial. No evidence was presented that there would be jobs available in petitioner's field of endeavor (agricultural business) upon completion of his education. Petitioner testified that he contacted only a few employers about employment and was informed no work was available.

Conversely, significant evidence favorable to petitioner was adduced regarding a number of factors listed above in *National Tea Co. v. Industrial Com.* (1983), 97 Ill. 2d 424, 432. Petitioner had clearly proved that he had sustained an injury which reduced his earning power, and it also was evident that the proposed rehabilitation program would increase his earning capacity. Petitioner had not unsuccessfully undergone a prior vocational training program, nor had he completed a prior rehabilitation program which would enable him to resume employment. Sufficient evidence was brought forward to demonstrate petitioner's positive capacity to be trained relative to his age, education, training, and occupation. Indeed, one of respondent's rehabilitation counselors, Alfred Walker, proposed the disputed vocational program based on his assessment of the petitioner's strengths and weaknesses. This fact distinguishes the instant case from *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489, upon which respondent relies heavily. In *Hunter*, the claimant created his own rehabilitation program without the assistance of a public or private agency. There the Illinois Supreme Court indicated its disapproval of claimant-created rehabilitation programs.

Petitioner also adduced substantial evidence that he did not have sufficient skills to obtain employment without further training or education. There was no dispute that petitioner, who had been employed at several unskilled manual labor jobs, could no longer perform such tasks. Both parties agreed that he should be employed in a sedentary position. Again, one of respondent's rehabilitation counselors, Alfred Walker, noted petitioner's potential for short-term training programs and suggested a G.E.D. program and subsequent training.

Considering the relative cost and benefits to be derived from the vocational program, there seems little question that, particularly in light of Mr. Engel's work-life expectancy, the benefits far outweigh

the costs. Presently in his early thirties, petitioner has a work-life expectancy of approximately three decades, which would likely be enhanced by his completion of the proposed program. Again, we note the factual difference between the instant case and *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489. The claimant in *Hunter* was 58 years of age, fully 25 years older than Mr. Engels.

. Petitioner's ability and motivation to undertake the proposed program were supported by the record. Alfred Walker's vocational assessment of petitioner indicated the latter's capacity to handle the agricultural/business program. Furthermore, petitioner appeared sufficiently motivated through his contacts with respondent's rehabilitation counselors and his taking of the college preparatory program to buttress the Commission's decision to award him vocational rehabilitation expenses.

On balance, the record indicates sufficient evidence to support the Commission's award of a year's vocational training at Black Hawk Junior College. Accordingly, we find that this vocational rehabilitation award is not contrary to the manifest weight of the evidence and, therefore, affirm the Commission's decision.

We next address the issue of penalties and interest assessed against respondent. The Commission ordered respondent to pay claimant $2,500 in penalties under section 19(l) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(l)) and $2,736.13 in attorney fees under section 16 of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.16). Section 19(l) of the Act provides for an award of up to $2,500 in penalties if the employer or its insurance carrier, without good cause, fails, neglects, refuses, or unreasonably delays payment of weekly payments due the injured employee during the period of temporary total disability. Section 16 states that attorney fees may be assessed against an employer or its insurance carrier which has been guilty of delay or unfairness toward an employee in the adjustment, settlement, or payment of benefits due the employee under the Act or has been guilty of unreasonable or vexatious delay, intentional underpayment of compensation payments, or has engaged in frivolous defenses which do not present an actual controversy. Ill. Rev. Stat. 1985, ch. 48, pars. 138.16, 138.19(l).

■■ ■ The intent of the above provisions is "to implement the Act's purpose to expedite the compensation of industrially injured workers and penalize an employer who unreasonably, or in bad faith, delays or withholds compensation due an employee." (*Avon Products, Inc. v. Industrial Com.* (1980), 82 Ill. 2d 297, 301.) If an employer delays paying compensation, the employer has the burden of showing

that it had a reasonable belief that the delay was justified. (*Continental Distributing Co. v. Industrial Com.* (1983), 98 Ill. 2d 407, 414.) The Commission's determination of whether the employer acted reasonably in delaying or denying compensation will not be disturbed on review unless it is against the manifest weight of the evidence. *McKay Plating Co. v. Industrial Com.* (1982), 91 Ill. 2d 198, 209.

■■ In the instant matter, respondent cut off claimant's benefits in May 1984. No payments were made between this date and the September 20, 1985, Commission hearing, even though the arbitrator had rendered his award on April 10, 1985. There was no doubt that plaintiff suffered a work-related injury which limited him to sedentary work. Respondent presented scant evidence to support its defenses that claimant failed to make a good-faith effort to find work, that he possessed sufficient skills to find work without further training and that his failure to find employment was due to general economic conditions. Accordingly, we conclude that the Commission's determination that respondent acted unreasonably in denying compensation was not against that manifest weight of the evidence. The circuit court thereby erred by setting aside the awards of penalties and attorney fees.

In summary, the Commission's award of vocational rehabilitation expenses to claimant for a one-year course in co-op management, seed fertilizer sales or elevator operation at Black Hawk College and the circuit court's confirmation of said award is affirmed. The Commission's awards of attorney fees and penalties to claimant are affirmed, and the circuit court's ruling that claimant is not entitled to these awards is reversed. The orders of the Commission and the circuit court of Bureau County are affirmed in all other respects.

Affirmed in part, and reversed in part.

BARRY, P.J., and McCULLOUGH, McNAMARA, and KASSER-MAN, JJ., concur.