THADDEUS E. MOORE, Appellant, v. THE INDUSTRIAL COMMISSION
*et al.* (International Harvester Company, Appellee).

Third District (Industrial Commission Division)   No. 3—88—0809WC

Opinion filed August 30, 1989.

Harrison H. Kavensky, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellant.

Linda E. Frischmeyer, of Katz, McAndrews, Durkee, Balch & Lefstein, of Rock Island, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Claimant, Thaddeus Moore, was awarded compensation for a work-related injury he received while employed by the respondent, International Harvester Company. At the hearing before the arbitrator, it was determined that claimant was entitled to 20 weeks of temporary total disability (TTD), $34 in medical bills, and 85¼ weeks of permanent partial disability (PPD) for 55% loss of the use of his right foot. The arbitrator also determined that the respondent was entitled to a credit of $4,139.20, an amount previously paid to the claimant, and which was approximately equal to the amount of TTD owed to the claimant.

Respondent appealed the arbitrator's decision to the Industrial Commission (Commission) and, at the hearing on review before the Commission, the respondent attempted for the first time to obtain an

additional credit for another previous payment of $4,811.82 made to the claimant on or around March 26, 1980, for the injury which was the basis of the claimant's compensation award. Because the respondent knew of this credit at the time of the hearing before the arbitrator and failed to request credit for this payment at that hearing, the Commission, in a separate summary decision, rejected the respondent's claim for the credit. In another summary decision, the Commission affirmed the arbitrator's decision, and since neither the claimant nor the respondent appealed the Industrial Commission's decision, that decision became final.

Subsequently, the respondent partially paid the claimant the PPD compensation awarded by the Commission, but withheld from its payment $4,811.82, the amount of the compensation the respondent had attempted to claim as a credit before the Commission on review and which was specifically rejected at that time. Because of the underpayment, the claimant filed a petition with the Commission for an assessment of penalties pursuant to section 19(k) and for attorney fees pursuant to section 16 of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, pars. 138.19(k), 138.16).

After the hearing on the claimant's petition for penalties and attorney fees, the Commission found that the respondent's intentional underpayment of the $4,811.82 was unreasonable and granted the claimant's petition. The Commission awarded claimant a penalty award of $8,820.09, 50% of the entire original PPD compensation award, and attorney fees in the amount of $1,764.00, 20% of the penalty awarded. Respondent appealed this decision to the circuit court. The circuit court did not disagree with the Commission's determination that a penalty award was appropriate, but the court did conclude that the Commission's determination of the amount of the penalty and, correspondingly, the amount of the attorney fees, was erroneous as a matter of law. Accordingly, the circuit court reduced the penalty awarded to the claimant by the Commission to $2,405.91, 50% of the amount of the PPD compensation which remained unpaid by the respondent, and reduced the amount of the attorney fees granted to $481.18, 20% of the reduced penalty. The claimant appeals.

On appeal, the respondent does not controvert its liability regarding the amount of TTD and the amount of PPD originally awarded to the claimant, or the Commission's determination that its failure to pay the entire award was unreasonable. The only concern presented is the amount of the penalty to be awarded pursuant to section 19(k) of the Workers' Compensation Act for the underpayment of the PPD award. (Ill. Rev. Stat. 1987, ch. 48, par. 138.19(k).) Thus, the only is-

sue before this court is the statutory construction of section 19(k).

■■ Section 19(k) states as follows:

"In case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, or proceedings have been instituted or carried on by the one liable to pay the compensation, which do not present a real controversy, but are merely frivolous or for delay, then the Commission may award compensation additional to that otherwise payable under this Act equal to 50 % of the *amount payable at the time of such award*. Failure to pay compensation in accordance with the provisions of Section 8, paragraph (b) of this Act, shall be considered unreasonable delay." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 138.19(k).

The entire controversy raised in this case centers upon the meaning of the phrase "amount payable at the time of such award" used in section 19(k), *i.e.*, does this phrase mean the amount of the original PPD compensation award which remains unpaid at the time the penalty is awarded, as the respondent contends and as the circuit court held, or does it mean the entire amount of the original PPD compensation award, as the claimant contends. Since this controversy involves a question of law, this court is not bound by the decision of the Industrial Commission or the circuit court. *Butler Manufacturing Co. v. Industrial Comm'n* (1981), 85 Ill. 2d 213, 422 N.E.2d 625.

■■■ Our research reveals that this specific issue has not been determined in previous Illinois cases; therefore, we must first consider the rules of statutory construction. Generally, the rule is that, to determine the construction of a statute, a court must ascertain and give effect to the legislature's intent. To determine this intent, the courts "may properly consider not only the language used in a statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341, 504 N.E.2d 84.) Where the statutory language is clear, there is no need to resort to other aids for its interpretation. (*Board of Trustees v. Shaw* (1985), 136 Ill. App. 3d 671, 483 N.E.2d 976.) When construing the statute, it is assumed that the legislature did not intend an absurd result. (*Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 504 N.E.2d 84.) When the language of the statute is susceptible of more than one interpretation, consideration of extrinsic factors to determine legislative intent is proper. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.

■■ According to Sutherland, "worker's compensation statutes are in derogation of the common law, nevertheless these acts are

highly responsive to social and economic needs that have long been recognized. In order to realize the fullest possible potential of the humane and beneficial purposes of worker's compensation statutes, they have been accorded a generally liberal interpretation. \*\*\* In keeping with the policy of worker's compensation statutes the courts are generally willing to give them an extended interpretation according to their intent, spirit and reason." (3A N. Singer, Sutherland on Statutory Construction §73.02, at 606 (Sands 4th ed. 1986).) Illinois case law is in accord with Sutherland. In *Peoria County Belwood Nursing Home v. Industrial Comm'n* (1987), 115 Ill. 2d 524, 505 N.E.2d 1026, the supreme court stated:

"The Workers' Compensation Act was intended to provide financial protection for injured workers regardless of a showing of negligence or contributory negligence, while precluding the employee from common law tort remedies. [Citation.] To that end, it has been consistently held that the Act should be liberally construed to accomplish its purpose and objects. [Citation.]" (*Peoria County Belwood Nursing Home*, 115 Ill. 2d at 529, 505 N.E.2d at 1028.)

We thus determine that our interpretation of section 19(k) should be a liberal one.

■■ It has been held that the intent of the penalty sections herein involved is " 'to implement the Act's purpose to expedite the compensation of industrially injured workers and penalize an employer who unreasonably, or in bad faith, delays or withholds compensation due an employee.' " (*Howlett's Tree Service v. Industrial Comm'n* (1987), 160 Ill. App. 3d 190, 196, 513 N.E.2d 82, 86, quoting *Avon Products, Inc. v. Industrial Comm'n* (1980), 82 Ill. 2d 297, 301, 412 N.E.2d 468, 470; *County of Cook v. Industrial Comm'n* (1987), 160 Ill. App. 3d 825, 513 N.E.2d 870; *Continental Distributing Co. v. Industrial Comm'n* (1983), 98 Ill. 2d 407, 456 N.E.2d 847.) Therefore, any interpretation of section 19(k) must coincide with this legislative intent.

Additionally, in our consideration as to what the term "amount payable" refers, it is helpful to consider Larson's treatise on workmen's compensation. That learned authority states as follows:

"Once the right to a penalty is established, there remains the question in some instances of how to calculate the amount. It might be thought that the percentage penalty figure should be applied only to the portion of the award as to which improper nonpayment or delay has been found, and some cases so hold. But in California, the 10 % statutory penalty is applied to all benefits of the same type as those for which payment has been

unreasonably withheld. This means that late payments of only legal fees or medical bills will not subject the employer to a penalty on the entire award. Likewise, if the delayed payments are for temporary disability, the penalty will not be calculated on the amount of permanent disability benefits. But once a penalty is imposed for failure to pay a type of benefit, the penalty is calculated on the entire amount of that type of benefits, including amounts which had been paid before the occurrence of the unreasonable delay." 3 A. Larson, Workmen's Compensation §83.41(d) (1989).

As we noted previously, there does not appear to be any cases on the precise issue presented here; however, an inference as to the meaning of section 19(k) can be obtained from the language used by the supreme court in *Robertson v. Travelers Insurance Co.* (1983), 95 Ill. 2d 441, 448 N.E.2d 866. In *Robertson*, the supreme court stated: "[s]ection 19(k) of the Act provides for the payment of penalties of 50 % of the amount of compensation payable," and that "the legislature has amplified the remedy available to victims of wrongful delay, so that it may include not only a penalty of 50% of the compensation award." (*Robertson*, 95 Ill. 2d at 447, 450-51, 448 N.E.2d at 869, 871.) This language implies that the supreme court considered the language "amount payable" used in section 19(k) to mean that the penalty is to be 50% of the entire type of benefit awarded, in this case, 50% of the entire PPD award, as was determined by the Industrial Commission.

■ After considering the case law and the previously cited authorities, we determine that the phrase, "amount payable," referred to in section 19(k) means the entire amount of the type of benefit originally awarded. This interpretation best implements the legislative intent to expedite payment to the injured worker and to penalize the employer for the unreasonable withholding of benefits duly owed to a claimant.

We also note that if we were to hold in accordance with the circuit court and with the literal interpretation of section 19(k), an absurd result could follow. For example, an employer intentionally underpays a benefit award and forces a claimant to seek penalties from the Commission, but, prior to the hearing on a claimant's petition for penalties, the employer pays the remainder of the compensation award. If the penalty is to be determined as a percentage of the portion of the remaining unpaid balance at the time of the penalty hearing, the claimant would be awarded nothing. We cannot conclude that this was the result that the legislature intended and we decline to so hold.

■ For the foregoing reasons, we reverse the circuit court's determination as to the amount of the penalty and attorney fees awarded to the claimant and reinstate the Industrial Commission's determination that the claimant be awarded a penalty in the amount of $8,820.09 and attorney fees in the amount of $1,764.00.

Reversed.

BARRY, P.J., and McNAMARA, WOODWARD, and McCULLOUGH, JJ., concur.