## MARION F. HINES v. WALTER KOBIELA AND ANOTHER.

241 N. W. 2d 814.

May 7, 1976—No. 45683.

*Fitch & Johnson* and *Raymond W. Fitch,* for relators.
*Abrams & Spector* and *Richard B. Abrams,* for respondent.

PETERSON, JUSTICE.

We are asked to review a decision of the Workers' Compensation Board awarding the employee benefits for permanent and total disability and a penalty pursuant to Minn. St. 176.225. The employer and insurer challenge the sufficiency of the evidence supporting the board's finding of permanent and total disability and the propriety of the award of penalty.

On November 15, 1966, the employee was severely burned in a fire and explosion while at the employer's construction site. A series of operations were performed, fusing the middle joints of the employee's four fingers of each hand into a cupped position to permit a pinching function. The employee was released from active medical care on August 13, 1968. In his final medical report, the treating physician expressed his opinion that the employee's healing period was ended, that the employee had sustained a 55-percent permanent partial disability of each hand, and that the employee could work subject to his disability.

On October 11, 1968, the insurer notified the employee of the contents of the final medical report and advised him that he would receive the scheduled benefits of 246.675 weeks at $45 per week payable every 2 weeks.[1] After a subsequent examination, the insurer voluntarily increased the permanent partial disability rating to 65 percent. By the time of the compensation hearing,

[1] Permanent partial disability benefits were payable on a periodic rather than lump-sum basis prior to the amendment of Minn. St. 176.021 by Ex. Sess. L. 1967, c. 40, § 5.

the insurer had paid a total of $15,165 in weekly and $16,056.64 in medical benefits.

On March 16, 1972, the employee's attorney wrote to the insurer inquiring about the employee's eligibility for supplemental benefits.[2] On April 7, 1972, the insurer replied that it was paying permanent partial benefits, making the employee ineligible for the supplemental benefits. On April 19, the employee's attorney requested that the matter be referred to the insurer's head claims agent, as it was doubtful the employee could work, and further asked for a vocational rehabilitation conference. On May 9, the insurer replied that it had reviewed their file and decided that the employee had not been continuously and totally disabled for 104 weeks prior to January 1, 1972. On May 12, the attorney wrote that the employee had not worked since the accident and asked what the insurer was doing in regard to rehabilitation. On July 17, the insurer replied that it was looking into the possibilities of rehabilitation. The employee's claim petition was filed on November 2, 1972.

The compensation judge found that the employee had been totally disabled from November 15, 1966, and was at the time of the hearing, permanently and totally disabled. He awarded the employee continuing compensation of $45 per week plus $15 per week from and after January 1, 1972, as supplemental benefits. On appeal, the compensation board affirmed the findings and award, but remanded for determination as to whether a penalty should be assessed.

On rehearing, the compensation judge found that the employer and insurer had neglected or refused to pay supplemental benefits at the rate of $15 per week from January 1, 1972. He award-

---

[2] Minn. St. 176.132 was added by L. 1971, c. 383, § 1, and provided that anyone receiving benefits under Minn. St. 176.101 and who had been totally and continuously disabled for more than 104 weeks, was eligible for supplementary benefits in the amount of the difference between the amount being received under Minn. St. 176.101, subds. 1 or 4, and $60 per week. Computation of the supplemental benefit has been modified by amendments of § 176.132 in 1973 and 1974.

ed the employee an additional $3.75 per week (25 percent of $15) for the period of such refusal, 129 1/5 weeks. On appeal, the unanimous compensation board found that the employer and insurer had "neglected and intentionally refused to pay temporary total and/or permanent total disability including supplemental benefits." The compensation board awarded permanent total disability at $45 per week from November 16, 1966, continuing supplemental benefits from January 1, 1972, and a penalty of $2,000 payable at $11.25 per week as disability accrues.

■ It is clear from our review that the compensation board's finding of permanent and total disability is amply supported by the evidence and consistent with our interpretations of Minn. St. 176.101, subd. 5. See, Schulte v. C. H. Peterson Const. Co. 278 Minn. 79, 157 N. W. 2d 130 (1967).

■ The more important issue is whether the compensation board's award of penalty was appropriate in this case. Minn. St. 176.225, subd. 1, provides as follows:

"Upon reasonable notice and hearing or opportunity to be heard, the division or upon appeal, the commission or the supreme court may award compensation, in addition to the total amount of compensation award, of up to 25 percent of that total amount where an employer or insurer has:

"(a)  instituted a proceeding or interposed a defense which does not present a real controversy but which is frivolous or for the purpose of delay; or,

"(b)  unreasonably or vexatiously delayed payment; or,

"(c)  neglected or refused to pay compensation; or,

"(d)  intentionally underpaid compensation."

The compensation board found that the employer and insurer violated clauses (a) and (c) of subd. 1. In determining the amount of the penalty, the board looked to the total amount of benefits awarded without considering amounts voluntarily paid as permanent partial disability benefits. The employer and insurer question both the application and calculation of the penalty.

We conclude that a penalty in some amount was justified in this case—not because the employer-insurer merely made a mistake, but because the reason for their neglect and refusal to pay compensation was patently ill-founded and unwarranted. It is unnecessary to detail all the evidence of the instances in which they repeatedly failed to meet their minimum responsibilities to provide the employee with the benefits to which he was entitled, for their conduct is exemplified in their unfounded reliance upon an unsubstantiated report that the employee had been observed laying a concrete block on a building project. They did not personally contact the employee or make other investigation to determine whether the report was accurate or whether the employee's action had been more than an unsuccessful attempt to work with his deformed hands. Their inadequate responses to the requests for investigation into the employee's eligibility for supplemental benefits and for consideration of retraining were of similar character.

The amount of the penalty, however, was excessive. Under its original decision, dated April 24, 1974, the compensation board awarded the employee permanent total disability from November 16, 1966, to the date of decision and continuing, and supplemental benefits in accordance with Minn. St. 176.132. This amounted to approximately 386 weeks of permanent total disability benefits of $45 per week, or $17,370, and 120 weeks of supplemental benefits of $15 per week or $1,800. Minn. St. 176.225 allows, in addition to the total amount of the compensation award, a penalty of up to "25 percent of that total amount." Although the board's award of $2,000 is within 25 percent of the aggregate amount awarded, the insurer had paid permanent partial disability benefits of $45 per week from the date of the injury to the date of the award. Thus, the penalty was in substantial part calculated as a percentage of amounts voluntarily paid. This was an incorrect application of the penalty statute. We accordingly remand to the board with instructions to reduce the amount of the penalty to that awarded by the compensation judge.

The employee is allowed $350 attorneys fees on this appeal. Affirmed in part, reversed in part, and remanded.